UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER LEWIS, | : | CIVIL NO. 4:14-CV-00885 |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| CORIZON HEALTH CARE, *et al.*, | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

### REPORT AND RECOMMENDATIONS

In this civil action, the *pro se* plaintiff, Christopher Lewis ("Lewis"), an individual who has since been released from state prison on parole, has filed a complaint pursuant to 42 U.S.C. § 1983. Generally, Lewis's allegations stem from his imprisonment at SCI Huntingdon. For the reasons stated herein, we recommend that this case be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for Lewis's failure to prosecute.

**I.    Background and Procedural History.**

Lewis initiated this lawsuit on May 8, 2014, by filing a complaint along with a motion for leave to proceed *in forma pauperis*. *Docs.* 1 & 2. In his complaint, Lewis names the following eight defendants: (1) Corizon Health Care ("Corizon"); (2) Bio Reference Labs; (3) Wexford Health Care ("Wexford"); (4) Garcia Laboratories ("Garcia"); (5) SCI-Huntingdon Superintendent Tabb Bickell ("Bickell"); (6) Corrections Officer Nelson ("Nelson"); (7) Corrections Officer

Heaster ("Heaster"); and (8) Lieutenant Powell ("Powell").  According to Lewis, he had suffered a serious back injury prior to his imprisonment.  *See Doc.* 1 at 2.  While imprisoned at SCI Huntingdon, however, Lewis claims that a non-defendant Physician's Assistant ("PA") denied him "proper [medical] care" for his back by not putting him on "medical lay" and for not ordering an MRI.  *Id.*  As a result, Lewis was required to work at his prison job, further injuring his back.

In addition, Lewis claims that on April 10, 2013, a nurse had sent "confidential medical test results" through the inmate mailing system that ended up in the hands of a different inmate.  According to the exhibit attached to Lewis's complaint, he had inquired about an HIV blood test regarding which he had not learned the results.  *Id.* at 6.  In response to Lewis's inquiry, the nurse simply stated: "[Lewis] [a]ll tests are good! All negative. Thank you."  *Id.*  Lewis complains, however, that he never gave permission to allow his medical results to be disclosed to others.

Last, Lewis complains that Wexford and Garcia falsified their medical reports "so they don't have to treat people with certain illnesses."  *Id.* at 4.  According to Lewis, he was diagnosed with "a certain illness" when he "got to the DOC," and he took a different HIV test that likewise turned out to be negative.  *Id.*  Lewis, though, claims that when he was at "Aria Frankfurt Hospital" he was informed that he was "ill," providing him with a presumption that he has HIV.  *See*

2

*id.* Based on these allegations, Lewis requests compensatory damages as well as injunctive relief against the named defendants.

Lewis also raises allegations in his complaint relating to defendants Powell, Nelson, and Heaster. On October 20, 2014, though, Lewis filed a notice of voluntary dismissal as to those defendants, in addition to Bickell.[1] *Doc.* 31. This was not Lewis's first notice of dismissal in this lawsuit. Nearly three months after filing his complaint, Lewis filed a notice of voluntary dismissal of the entire case. *Doc.* 7. After a Report and Recommendation was docketed, recommending the dismissal of this lawsuit, however, Lewis wrote to the Court explaining that he wished to pursue this case. *See Doc.* 9. As such, the Report and Recommendation was rejected as moot, and Lewis's motion to proceed *in forma pauperis* was granted. *Doc.* 10.

While summonses were being issued to the various defendants, *see generally, Doc.* 12, Lewis filed a supplemental complaint without first seeking leave of court. *See Doc.* 13. Accordingly, we struck Lewis's unauthorized pleading and explained to him the process for seeking leave to amend or supplement a complaint. *See Doc.* 14. Lewis never filed an amended complaint of right, nor did he ever file a motion to amend or to supplement the original complaint.

---

[1] Aside from the caption, Lewis makes no reference to Bickell in the complaint.

On October 9, 2014, Bickell, Heaster, Nelson, and Powell filed a motion to dismiss. *Docs.* 26 & 27.  Lewis, as mentioned, *supra,* subsequently filed a notice of voluntary dismissal regarding said defendants. *Doc.* 31.  Thereafter, on October 27, 2014, Wexford filed a motion to dismiss. *Docs.* 33 & 34.  Moreover, on November 7 and 10, 2014, Corizon and Garcia, respectively, did the same, as did Bio Reference Labs on December 12. *See Docs.* 37, 38, 41, 43, 46, & 47.

On October 28, 2014, we issued a briefing order for Lewis in regards to Wexford's dismissal motion. *Doc.* 35.  Approximately one week later, we received a letter from Lewis requesting an extension of time until Christmas 2014 because he was to be paroled. *See Doc.* 36.  We granted Lewis's request, while simultaneously setting a deadline for him to respond to the dismissal motions that had since been filed by Corizon and Garcia. *See Doc.* 44.  Said Order was returned as undeliverable because Lewis had already been paroled. *See Doc.* 45.

Subsequently, after Bio Reference Labs filed its dismissal motion, we issued another briefing order. *Doc.* 48.  That order was also returned as undeliverable. *Doc.* 49.  Upon review of Lewis's earlier request for an extension of time, we ordered the Clerk of Court to update Lewis's address to that mentioned in his request. *See Docs.* 36 & 50. We also gave Lewis a further extension of time to file his opposition to the pending dispositive motions. *See Doc.* 50.  The deadline we

gave him expired on March 9, 2015. *Id.* To date, Lewis has not opposed any of the dispositive motions filed, nor have we heard from Lewis in any capacity.

**II.     Discussion**.

Federal Rule of Civil Procedure 41(b) provides that an action may be involuntarily dismissed "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." Under Rule 41(b), the Court may dismiss a complaint *sua sponte*. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962); *Hewlett v. Davis*, 844 F.2d 109, 114 (3d Cir. 1988) (same). When determining whether to *sua sponte* dismiss a complaint, as a sanction for failure to prosecute and failure to comply with court orders, a district court must balance the following six factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984). None of the six "*Poulis* factors" is dispositive. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). A district court may also dismiss a complaint where not all six factors are satisfied. *Mindek v. Rigatti,* 964 F.2d 1369, 1373 (3d Cir.1992).

Ultimately, the decision to dismiss remains within the discretion of the district court. *Id.* We will discuss the *Poulis* factors *seriatim*.[2]

**A. The extent of Lewis's personal responsibility.**

This factor weighs in favor of dismissal because Lewis is personally responsible for complying with the Local Rules of, and orders from, this Court. Moreover, in our last order directing Lewis to file briefs-in-opposition to the defendants' various dismissal motions on or before March 9, 2015, we specifically informed him that we would recommend that this case be dismissed for failing to prosecute if we did not hear from him once the final briefing deadline expired. *See Doc.* 50. Thus, Lewis had personal knowledge of the consequences for not complying with our Order.

The standard practice order sent to Lewis at the initiation of this lawsuit also forewarned him that it is his responsibility to keep the Court informed of his current address, and that "[i]f the court is unable to communicate with [him] because [he] has failed to notify the court of his . . . address, [he] will be deemed to have abandoned the lawsuit." *See Doc.* 4-1 at 4. Accordingly, he cannot claim

---

[2] In addition to Rule 41(b) of the Federal Rules, this Court's Local Rule 83.3.1 provides that a failure to comply with any of the Court's Local Rules "may be considered an abandonment or failure to prosecute or defend diligently." Moreover, Local Rule 83.18 provides that parties not represented by counsel "shall maintain on file with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served . . . ." *See also,* M.D. Pa. L.R. 7.6 ("Any party who fails to [file a brief in opposition] shall be deemed not to oppose [a] motion.").

ignorance of this rule if the documents in this case have been going to an incorrect address.

### B. Prejudice to the defendants.

Generally, "prejudice" here means "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 874 (3d Cir. 1994). In this case, there is no record evidence demonstrating that the defendants have incurred any prejudice for Lewis's failure to respond to their dispositive motions or for his presumed failure to apprise the Court of his current address. Therefore, we find that this factor weighs against dismissal.

### C. History of dilatoriness.

This factor, too, weighs against dismissal. A history of dilatoriness might be found from "extensive or repeated delay or delinquency," such as "consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams,* 29 F.3d at 874; *see also Ware*, 322 F.3d at 222. Other than Lewis's most recent failure to file briefs-in-opposition to defendants' dismissal motions by March 9, 2015, there is no history of dilatoriness on his part, in this case.

**D. Whether Lewis's conduct was willful or done in bad faith.**

Under this factor, the Court must consider whether the conduct was "the type of willful or contumacious behavior which was characterized as flagrant bad faith." *Adams,* 29 F.3d at 875. Generally, "[w]illfulness involves intentional or self-serving behavior." *Id.* Bad faith is found when the conduct goes beyond mere negligence. *Emerson v. Thiel College*, 296 F.3d 184, 191 (2002). In this case, there is no evidence that Lewis has displayed willful conduct or bad faith. This factor would too appears to weigh against dismissal.

**E. Effectiveness of sanctions other than dismissal.**

Under this factor, a district court must consider the availability of sanctions alternative to dismissal. *Poulis,* 747 F.2d at 869. Generally, in a situation such as this one, where a plaintiff is proceeding *pro se* and *in forma pauperis*, no alternative sanctions exist because monetary sanctions, including attorney's fees, "would not be an effective alternative." *Emerson,* 296 F.3d at 191. Thus, it is readily apparent that monetary sanctions would be ineffective in light of Lewis's financial situation, and, although Lewis was recently paroled, we have no record evidence that his financial standing has improved. Thus, this factor weighs in favor of dismissal.

**F. The meritoriousness of Lewis's claims.**

Here, we do not consider the meritoriousness of Lewis's claims against Bickell, Powell, Heaster, and Nelson. Again, Lewis filed a notice of voluntary dismissal against those defendants after they had filed a motion to dismiss. *Doc.* 31.

Regarding Corizon, there are no allegations of liability against said entity in the complaint. Furthermore, although Lewis does not provide specifics about Corizon, such as when said entity provided him with medical care, the entity appears to have a valid defense in that the record evidence demonstrates that it did not provide healthcare to DOC institutions as of January 1, 2013: prior to the relevant period of time comprising Lewis's complaint. *See Doc.* 38 at 2; *Doc.* 40-1 at ¶ 6; *see also, Doc.* 40-3 (medical notes of Lewis, dated in 2014, by the PA referenced in the complaint).

Regarding the remaining defendants, i.e., Wexford, Bio Reference Labs, and Garcia, they appear to be private entities. Thus, assuming they even qualify as state actors, they can only be held liable for a constitutional violation brought pursuant to 42 U.S.C. § 1983 if a plaintiff demonstrates "that there was a relevant . . . policy or custom [in place], and that the policy [or custom] caused the [alleged] constitutional violation[(s)] . . . ." *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Board of County Comm'rs of Bryan*

9

*County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). At the pleading stage, Lewis has not plausibly shown that a policy or custom of any of these entities caused any constitutional injury, assuming that he has even plausibly shown that any of these defendants were involved with the incidents he complains about. As we see it, Lewis has not even properly alleged the existence of any constitutional injury.

Based on our reading of the complaint, Lewis attempts to raise Eighth Amendment claims against these entities in relation to the alleged medical care he received for his back and for the HIV testing, in addition to the alleged falsification and distribution of his medical records. With respect to the medical treatment Lewis allegedly received for his back injury, he merely complains about the independent medical decision made by the PA not to put him on "medical lay" or to order an MRI. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)(stating that a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice."). Lewis does not claim that the PA refused to provide medical care, delayed treatment for non-medical reasons, denied proscribed medical treatment, or reasonable requests for treatment that resulted in suffering or risk of injury. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

With respect to the HIV testing he received, Lewis similarly fails to show how the testing done on him was incorrect such that it amounts to an Eighth Amendment violation. Indeed, Lewis alleges that another test confirmed the same result, i.e., that he did not have HIV. Nor does Lewis allege that he has since confirmed that he has HIV.

In a related context, allegations of falsifying medical records without explanation as to how the falsification affected medical treatment is insufficient to state a § 1983 claim for an Eighth Amendment violation. *Rivera v. Tennis*, 09–0888, 2010 WL 2838603 (M.D. Pa. May 20, 2010). Finally, based on the contents of Lewis's pleading, it is readily apparent that any release of his medical information was negligently made, not qualifying for an Eighth Amendment violation.

As such, any constitutional claim raised against the private-entity defendants, including Corizon, to the extent he has even shown their involvement, are meritless based on the contents of Lewis's current pleading.

### G. Balancing the *Poulis* factors.

Again, in balancing the *Poulis* factors, no single factor is dispositive. *Ware,* 322 F.3d at 222. Furthermore, not all of the factors need to be satisfied in order to dismiss a complaint. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992). In this instance, many of the crucial factors weigh in favor of dismissal for Lewis's

failure to comply with our last briefing order or to otherwise update his current address.

## III. Recommendations.

For these reasons, **WE RECOMMEND** that this case be **DISMISSED** pursuant to Federal Rule of Civil Procedure 41(b), the defendants' motions to dismiss (*Docs.* 26, 37, 41, & 46) be **DENIED** as moot, and the case file be **CLOSED**. The parties are placed further on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **26th** day of **June, 2015**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge